UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ELEEN MARINE JSC, § | | |
| Plaintiff § | | NO. 4:22-CV-04436 |
| § | | |
| v. § | | IN ADMIRALTY |
| § | | |
| 22,143.27 METRIC TONS, MORE OR § | | |
| LESS OF BULK CEMENT CARGO, § | | |
| in rem § | | |

## MOTION TO VACATE ORDER FOR ISSUANCE OF WARRANT OF ARREST AND WARRANT OF ARREST

Sesco Cement Corp. ("Sesco Cement"), through undersigned counsel, pursuant to its restricted appearance under Rule E(7) of the Supplemental Rules for Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, reserving all rights, defenses, and claims under any agreements that may govern, including the right to resolution of claims through arbitration pursuant to foreign law, respectfully moves this Honorable Court to vacate the Order authorizing Warrant of Arrest (Rec. Doc. 6) and Warrant of Arrest (Rec. Doc. 7) issued in on December 22, 2022.

Eleen Marine JSC ("Eleen Marine") does not possess a lien under its charter party with Caycem Trading Limited ("Caycem") over cargo owned by Sesco Cement because there is no evidence that charter party was incorporated into the Bills of Lading covering the cargo, and no evidence that Sesco Cement received a copy of that charter party prior to payment of freight on October 4, 2022. One or both of these elements is required under *Lykes Lines Ltd. v. M/V BBC SEALAND*, 398 F.3d 319, 323 (5th Cir. 2005), and the authorities cited therein. In their absence, the maritime lien claim asserted in Eleen Marine's Original Verified Complaint (the "Verified Complaint") fails, and the Order for Issuance of Warrant of Arrest and Warrant of Arrest should be vacated.

1

**FACTUAL BACKGROUND**

Sesco Cement was and is at all times the owner of a cargo of various grades of cement (the "Cargo") shipped onboard the M/V BEDFORD CASTLE (the "BEDFORD CASTLE" or "Vessel"), which Cargo is the subject of the Court's pending Warrant of Arrest. Eleen Marine JSC was and is at all times the disponent owner of the BEDFORD CASTLE. *See* Verified Complaint, Rec. Doc. 1, ¶ 3.

**A. Eleen Marine's charter of the BEDFORD CASTLE to Caycem.**

As evidenced in Eleen Marine's Verified Complaint and the attachments thereto, on November 22, 2021, Eleen Marine entered into a NYPE Government Form time charter party (the "Head Charter Party") with Caycem, as amended and supplemented by rider clauses. *See* Head Charter Party, attached as Exhibit A. The Head Charter Party grants Caycem the right to utilize the full capacity of the BEDFORD CASTLE for an initial term of 10-12 months, and to sublet the vessel subject to Caycem remaining responsible at all times for fulfillment of the terms of the Head Charter Party. *See id.*, Lines 16-17, 71-73. The Head Charter Party requires Caycem to pay charter hire to Eleen Marine in the amounts and at the intervals specified in that agreement, and gives Eleen Marine a ***contractual*** right to assert "a lien upon all cargoes, and all sub-freights, sub-hires for any amounts due under this Charter…."[1] Notably, though, Sesco Cement is not a party to the Head Charter Party, nor was it aware of any terms of the Head Charter Party until December 20, 2022 at the earliest. Therefore, as discussed below, the Head Charter Party's contractual lien does not extend to Sesco Cement's Cargo.

**B. Caycem's fixture of the BEDFORD CASTLE to Premium Logistics for carriage of Sesco Cement's Cargo.**

---

[1] For purposes of this Motion alone, Sesco Cement does not contest that Caycem has failed to timely pay charter hire owed to Eleen Marine under the Head Charter Party, such being immaterial to the grounds for vacatur of Eleen Marine's asserted lien.

On or about August 28, 2022, Caycem entered into a fixture (the "August Fixture") with Premium Logistics BVI ("Premium Logistics"), who was engaged to arrange transportation of the Cargo to Sesco Cement. *See* August Fixture, attached as Exhibit B. The August Fixture was concluded in the form of a "fixture recap," a common industry method for fixing vessels in which the parties agree to the main terms of the fixture and otherwise incorporate a prior fixture agreement or standard form charter party. *See, e.g., Toisa Ltd. v. CAMAC Intern'l Corp.*, No. 10-4177, 2012 WL 1952258, *7 (S.D.Tex. May 30, 2012). In this instance, the fixture recap clearly identified Caycem as the disponent owner and Premium Logistics as the charterer, and required Premium Logistics to pay freight of USD $42.00 per metric ton for shipment of a single partial cargo cement (and a small quantity of steel) from Damietta, Egypt to Houston, Texas. *See* Voyage Charter Party, pp. 1-2. The August Fixture referred to a prior fixture of the BEDFORD CASTLE dated April 6, 2022 for additional terms, using the following language: "OTHERWISE AS PER CLEAN CENCN CP MV BEDFORD CASTLE CP DTD April 06-2022." *Id.* at p. 2. The referenced April 6, 2022, charter was likewise accomplished by a fixture recap (the "April Fixture") for charter of the Vessel from Caycem to Premium Logistics, which concluded with the following incorporating reference: "Owise as per charterers CP executed proforma BEDFORD CASTLE / 6 April 2022." *See* April Fixture, attached as Exhibit C, p. 4. On information and belief, no proforma charter party was ever executed, leaving the foregoing incorporation language ambiguous at best, if not circular and meaningless.

Importantly, Eleen Marine is not a party to the August Fixture; indeed, it is not mentioned or referred to anywhere in the August 28, 2022 fixture recap, or in the April 6, 2022 fixture recap referenced therein. *Id.* Eleen Marine therefore has no rights under the August Fixture, nor does it claim any such rights in its Verified Complaint.

3

**C. Shipment of the Cargo by Premium Logistics to Sesco Cement**

On or about September 24, 2022 and October 16, 2022, the Cargo was loaded onboard the BEDFORD CASTLE in Damietta, Egypt, for shipment to Sesco Cement as consignee in Houston, Texas. *See* Bills of Lading, attached as Exhibit D. The Cargo was covered by five (5) Bills of Lading, attached as Exhibit D, summarized as follows:

| Bill No. | Date | Description |
|---|---|---|
| 1 | 9/24/2022 | 8,972.720 mt White Masonry Cement C91 in Bulk |
| 2 | 9/24/2022 | 8,977.220 mt White Masonry Cement C150 in Bulk |
| 4 | 10/16/2022 | 783.140 mt White Masonry Cement C150 in Bulk |
| 5 | 10/16/2022 | 13,942.780 mt Grey Masonry Cement C91 in Bulk |
| 6 | 10/16/2022 | 39.63 mt Steel Structures |

Consistent with Eleen Marine's allegation in its Verified Complaint, the reverse side of each Bill of Lading states as follows: "All terms and conditions, liberties and exceptions of The Charter Party, ***dated as overleaf***, including the Law and Arbitration Clause, are herewith incorporated." *Id.* (emphasis added). However, as the Verified Complaint conspicuously omits, the front of each Bill of Ladings explicitly and repeatedly incorporates the August 28, 2022 fixture agreement between Caycem and Premium Logistics (*i.e.*, the August Fixture) – ***not*** the Head Charter Party dated November 22, 2021 between Eleen Marine and Caycem – and as such does not incorporate any contract that Eleen Marine is a party to:

```
SCAC-CODE: CMHW4
CLEAN ON BOARD ON 16/10/2022
FREIGHT PAYABLE AS PER C/P DATED 28.08.2022
           (of which     on deck at Shipper's risk the Carrier not
           being responsible for loss or damage howsoever arising)
Freight payable as per CP          SHIPPED at the Port of Loading in apparent good order and
                                   condition on board the Vessel for carriage to the Port of
FREIGHT PAYABLE AS PER C/P DATED   Discharge or so near thereto as she may safely get the goods
28.08.2022                         specified above.
                                   Weight, measure, quality, condition, contents and value
```

On September 23 and September 30, 2022 Caycem issued Freight Invoices to Premium Logistics totaling $1,233,251.89 for shipment of the Cargo specified in the above Bills of Lading. *See* Freight Invoices, attached as Exhibit E *in globo*. On September 26, 2022, Premium Logistics made an advance payment of freight by wire to Caycem in the amount of $281,325.00. *See* Wire Confirmations, attached as Exhibit F *in globo*. On October 4, 2022, Premium Logistics made a second payment by wire to Caycem in the amount of $951,926.89. *Id.* In sum, by October 4, 2022, freight totaling $1,233,251.89 was paid to Caycem, representing full payment of Caycem's Freight Invoices and full satisfaction of freight owed to Caycem for shipment of the Cargo. Importantly, by this date Eleen Marine had not provided any notice to Sesco Cement (or Premium Logistics, for that matter) of any alleged right to assert a lien arising under its contract with Caycem, nor of any actual intent to assert such a lien.

As set forth below, Eleen Marine's failure to provide actual notice of its alleged right and intention to assert a lien against Sesco Cement's Cargo before full payment of freight for the Cargo was made to Caycem is fatal to its claim. Accordingly, its assertion of a lien now is improper. The Order granting the Warrant of Arrest and the Warrant of Arrest should therefore be vacated.

**PROCEDURAL BACKGROUND**

Eleen Marine filed its Verified Complaint on December 21, 2022. Rec. Doc. 1. The following day, December 23, 2022, Eleen Marine filed its Motion for Issuance of a Warrant of

5

Arrest. Rec. Doc. 4. Neither the Verified Complaint nor the Motion for Issuance of a Warrant of Arrest pointed out that the Bills of Lading do not incorporate the Head Charter Party to which Eleen Marine is a party, but instead specifically incorporate the August Fixture to which it is not. Relying on Eleen Marine's allegations and representations, the Court granted Eleen Marine's Motion and issued a Warrant of Arrest on December 22, 2022. Rec. Docs. 6-7. Despite the passage of eight (8) days since the Court's issuance of the Warrant of Arrest, Eleen Marine has yet to arrange service of the Warrant of Arrest on the Cargo. Instead, on or about December 27, 2022, having represented to the Court in its Verified Complaint that the Vessel and Cargo were "within the District," Eleen Marine caused the Vessel to *leave* the District by sailing out of the Port of Houston and back to anchorage.

## LAW AND ARGUMENT

### I.      Standard for Motion to Vacate

Under Rule E(4)(f) of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure provides, in relevant part:

> Whenever property is arrested or attached, any person claiming an interest in it shall be entitled to a prompt hearing at which the plaintiff shall be required to show why the arrest or attachment should not be vacated or other relief granted consistent with these rules.[2]

"Courts have held that at a Rule E(4)(f) hearing, a plaintiff must show reasonable grounds for the arrest and attachment and that it should be maintained."[3] "A maritime lien is a prerequisite to an action *in rem*."[4] Therefore, at a Rule E(4)(f) hearing, "[t]he plaintiff must show by a

---

[2] Fed. R. Civ. P. Supp. E(4)(f).
[3] *E.g.*, *Seatrade Group N.V. v. 6,785.5 Tons of Cement*, No. 05-2771, 2005 WL 3878026, *2 (S.D.Tex. Dec. 7, 2005) (citations omitted).
[4] *E.g., Belcher Co. of Alabama, Inc. v. M/V MARATHA MARINER*, 724 F.2d 1161, 1163 (5th Cir. 1984).

preponderance of the evidence that it is entitled to a valid lien."[5] "[C]ourts must construe maritime liens strictly and be cautious in expanding the body of recognized liens."[6]

  II.  **Eleen Marine does not possess a maritime lien on the Cargo because Sesco Cement, the Cargo's undisputed owner, did not receive notice of any such lien prior to payment of freight.**

As the Fifth Circuit recognized in *Lykes Lines Ltd. v. M/V BBC SEALAND*, "maritime law recognizes a lien arising as a matter of law in favor of the vessel owner against the cargo for charges including unpaid freight."[7] "***However***, when cargo is shipped under a charter, this lien only extends to cargo that is owned by the charterer."[8] The Fifth Circuit explained:

> When cargo shipped under a charter is owned by a third party, general maritime law does not give the shipowner a lien against either the cargo or the freight money. Charter parties, however, customarily provide that the owner shall have a lien against cargo and freight and require the charterer to insert appropriate clauses in bills of lading subjecting the bills to the lien provision in the charter.[9]

Because a lien arising in favor of a shipowner against cargo owned by a third party is "a creature of contract," "[t]o be enforceable against a third party cargo owner… who is not a party to the charter party agreement, the vessel owner's lien must be perfected."[10] "To perfect its lien, the vessel owner must give ***actual notice*** of the lien provision in the charter party to the cargo owner before the cargo owner pays its freight to the bill of lading issuer. ***Otherwise the lien is discharged***."[11] "Actual notice can be given, for example, by incorporating the lien from the

---

[5] *Seatrade*, 2005 WL 3878026 at *2 (citing *Ocean Marine Mut. Ins. Ass'n (Europe) O.V. v. M/V LIA*, No. 99-515, 1999 WL 679671 (E.D.La. Aug 27, 1999); *Amstar Cor. V. S/S Alexandros T.*, 664 F.2d 904, 912 (4th Cir. 1981)).
[6] *E.g.*, *MARMAC, LLC v. Intermoor, Inc.*, 566 F.Supp.3d 559, 575 (E.D.La. 2021) (citing *Osaka Shosen Kaisha v. Pac. Exp. Lumber Co.*, 260 U.S. 490, 43 S.Ct. 172, 67 L.Ed. 364 (1923)).
[7] *Lykes Lines Ltd. v. M/V BBC SEALAND*, 398 F.3d 319, 323 (5th Cir. 2005).
[8] *Id.* (emphasis added).
[9] *Id.*
[10] *Id.*
[11] *Id.* (citing *Toro Shipping Corp. v. Bacon-McMillan Veneer Mfg. Co.*, 364 F.2d 928 (5th Cir. 1966); *Finora Co. v. Amitie Shipping*, 54 F.3d 209, 213 (4th Cir. 1995); *Hornbeck Offshore Operators v. Ocean Line*, 849 F.Supp. 434, 439 (E.D.Va. 1994)). See also *Cornish Shipping Ltd. v. International Nederlanden Bank N.V.*, 53 F.3d 499, 502 (2nd

charter party in the bill of lading issued to the shipper or by providing a copy of the charter party to the shipper."[12] "Before such notice is given, the lien is essentially inchoate."[13]

In *Lykes Lines*, the Fifth Circuit analyzed a situation nearly identical to the case at bar and found that the vessel owner did not possess a lien over cargo owned by a third party due to lack of proper and timely notice. There, a vessel owner asserted a maritime lien against cargo owned by a third-party after their charter party counterpart failed to pay charter hire.[14] The vessel owner argued that it was granted a lien under a clause in its charter party that provided that the "Owners shall have a lien on the cargo and on all sub-freights payable in respect of the cargo, for freight, deadfreight, demurrage, claims for damages and for all other amounts due under this charter party including costs of recovering same."[15] The district court held that the lien was not enforceable against property owned by anyone party other than the charterer because no actual notice of the lien was provided to the third party cargo owner until two weeks after the cargo owner paid its freight bill in full, when the vessel owner sent a copy of its charter party to the cargo owner.

On appeal by the vessel owner, the Fifth Circuit affirmed the district court's ruling that no lien existed. In doing so, the Fifth Circuit explicitly rejected the vessel owner's argument that constructive notice of the lien had been provided: "Even if these facts constitute constructive

---

Cir. 1995) ("Indeed, the lien is altogether extinguished if the consignee pays the subfreights to the charterer or its agent in good faith prior to receiving notice of the lien.") (citations omitted).
[12] *Id.* (citing *Hornbeck*, 849 F.Supp. at 439).
[13] *E.g.*, *Ravenna Tankers Pte., SRL v. Omni Ships Pte. Ltd.*, No. 13-127, 2013 WL 2153544, *5 (E.D.La. May 15, 2013) (citing *Cornish Shipping*, 53 F.3d at 502). See also *Toro Shipping Corp. v. Bacon-McMillan Veneer Mfg. Co.*, 364 F.2d 928, 930 (5th Cir.1966) ("A review of the jurisprudence suggests, in essence, this broad equitable premise: The shipowner has a maritime lien for charter hire on cargo where a lien is reserved initially in the original charter and expressly incorporated into the bills of lading *except* as against a good faith purchaser of the cargo who had paid for it in advance without notice of the shipowner's rights.").
[14] *Lykes Lines*, 398 F.3d at 321.
[15] *Id.*

notice, constructive notice is insufficient to perfect liens against third party cargo."[16] The Fifth Circuit then rejected the vessel owner's alternative argument that sufficient notice of the lien provision in the head charter party was provided by the bill of lading issued to the cargo owner, which: (1) identified the "Carrier" entitled to a lien as being the *charterer* "and any connecting Carrier performing transportation under the transportation agreement evidenced by this bill of lading;" and (2) identified the carrying vessel by name.[17] The Fifth Circuit disagreed, and wrote:

> We have found no cases supporting an argument that such incomplete information places the cargo owner on notice of the lien provision in the charter party. *The cases finding notice generally do so when the cargo owner is notified that the vessel owner is claiming a lien, the legal basis for the lien (the charter party agreement) and that the vessel owner intends to enforce it by demanding payment of freights directly to it.* For example in *Hornbeck* at 437–38, the vessel owner's agent notified the cargo owner that it claimed a lien under the terms of the charter party and requested that the cargo owner pay all outstanding freights owned to the charterer directly to the vessel owner. In *Finora,* a vessel owner's request to the subcharterer to pay subfreights directly to it was not actual notice of the lien in favor of the vessel owner because it was based on the ground that the charterer had assigned the subfreights. *Finora* at 211. The court held that the notice "should inform third-party obligors of the existence of the lien, the legal basis for the lien, and the fact that the lienholder intends to exercise it." *Finora* at 212. Nothing in the [charterer's] bill of lading makes reference to a lien in favor of [vessel owner], the legal basis for the lien (the charter party agreement) or that [vessel owner] intended to enforce it. *Finora,* 54 F.3d at 212. The language of this provision does not satisfy the requirement of "clear notice" required to impose a lien for unpaid charter hire on cargo owned by a party not in privity with the vessel owner and charterer. *Id.* Such notice was not given to [cargo owner] until January 10, 2002, after [cargo owner] had paid its freight obligation to [charterer].[18]

---

[16] *Id.* (citing *Finora*, 54 F.3d at 212).
[17] *Id.* at 324.
[18] *Id.*, at 324-25 (emphasis added). See also *Cornish Shipping*, 53 F.3d at 502 (finding notice sufficient to perfect a lien where "Cornish (the shipowner) gave notice to POSCO (the consignee) that it was exercising its lien before POSCO took the final steps necessary to authorize payment of 'freight' charges to INB, the agent of Ferromet (the charterer)").

9

The Fifth Circuit's *Lykes Lines* analysis applies equally here and demonstrates why Eleen Marine's assertion of a lien is improper. Eleen Marine claims a maritime lien exclusively under its November 22, 2021 Head Charter Party with Caycem. Sesco Cement, the undisputed owner of the Cargo, is not a party to that charter party. Accordingly, to claim a lien under that agreement Eleen Marine must show that its lien was properly perfected against Sesco Cement prior to payment of freight. As *Lykes Lines* recognizes, this is typically done by either providing a copy of the head charter party to the cargo owner, or by incorporation of the head charter party into the bill of lading. Neither was done here. First, Eleen Marine does not claim (nor provide any evidence) that a copy of the Head Charter Party was provided to Sesco Cement before this suit was filed, and certainly not before October 4, 2022 when full freight was payed to Caycem. *See* Wire Confirmations, attached as Exhibit F. Instead, Eleen Marine's Verified Complaint alleges at Paragraph 9 of its Verified Complaint:

> The notice of the lien was also previously provided on the Bill of Lading, which among other things, included at Clause 1 of the Conditions of Carriage the following: "All terms and conditions, liberties and exceptions of the Charter Party, dated as overleaf, including the Law and Arbitration Clause, are herewith incorporated."

The Verified Complaint conspicuously fails to allege that the Bills of Lading incorporated the November 22, 2021 Head Charter Party dated August, though, because they did not; rather, the Bills of Lading incorporated the August Fixture dated August 28, 2022. Eleen Marine is not a party to that fixture recap, is not mentioned anywhere in that fixture recap, and is not granted a lien under the fixture recap (indeed, it does not even claim one). Instead, the only party that conceivably *could have* acquired a lien for unpaid carriage costs under the August Fixture is Caycem, who was identified therein as the disponent owner of the Vessel, and who would therefore be the "owner" *vis a vis* Premium or Sesco Cement for purposes of any

10

contractual lien.[19] Any lien that *could have* arisen in favor of Caycem was extinguished by full payment of freight owed to Caycem on October 4, 2022.

Eleen Marine's Verified Complaint and the exhibits thereto reveal that the earliest Sesco Cement received actual notice that Eleen Marine was "claiming a lien, the legal basis for the lien (the charter party agreement) and that the vessel owner intends to enforce it" was December 20, 2022, when Eleen Marine sent the correspondence attached as Exhibit 3 to its Verified Complaint. *See* Rec. Doc. 1-3. This was more than two months after full freight was paid to Caycem for the shipment, extinguishing any lien that could have existed against the Cargo in the first place.[20] Accordingly, Eleen Marine's notice was insufficient under Fifth Circuit law to grant it any rights against Sesco Cement or the Cargo.

In sum, Eleen Marine does not possess a lien under its Head Charter Party with Caycem over cargo owned by Sesco Cement because there is no evidence that the Head Charter Party was incorporated into the Bills of Lading covering the cargo, and no evidence that Sesco Cement received a copy of the Head Charter Party prior to payment of freight on October 4, 2022. One or both of these elements is required under *Lykes Lines* and the authorities cited therein. In their absence, Eleen Marine's claim fails, and the Order for Issuance of Warrant of Arrest and Warrant of Arrest should be vacated.

                              Respectfully submitted,

                              LUGENBUHL, WHEATON, PECK, RANKIN &
                                HUBBARD, A LAW CORPORATION

                              */s/ Todd G. Crawford*

---

[19] See *Lykes Lines*, 398 F.3d at 324-25 (relying on contract's identity of "carrier" to determine party who acquired lien under contract). In fact, the facts here are move favorable to Sesco Cement than those in *Lykes Lines*, as there is no language in the August Fixture that even purports to extend any rights to "any connecting carrier…."

[20] Freight Invoices, attached as Exhibit E; Wire Confirmations, attached as Exhibit F. See also *Lykes Lines*, 398 F.3d at 323; *Cornish Shipping*, 53 F.3d at 502.

Todd G. Crawford
Texas Bar No. 05041050
tcrawford@lawla.com
801 Travis Street, Suite 1800
Houston, Texas 77002
Telephone: (713) 222-1990
Facsimile: (713) 222-1996
And

Alan R. Davis
Louisiana Bar No. 31694
Pending Admission *Pro Hac Vice*
adavis@lawla.com
601 Poydras Street, Suite 2750
New Orleans, Louisiana 70130
Telephone: (504) 568-1990
Facsimile: (504) 310-9195
*Attorneys for Claimant Sesco Cement Corp.*

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above pleading has been served on all counsel of record via electronic filing and/or via email on this the 30th day of December, 2022.

*/s/ Todd G. Crawford*

Todd G. Crawford